UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

| | |
|---|---|
| MOLLY LARKIN,<br><br>　　　　　　　　　　Plaintiff,<br>vs.<br><br>STATE GARDEN, INC.,<br>a Massachusetts corporation,<br><br>　　　　　　　　　　Defendant. | **COMPLAINT<br>AND JURY DEMAND**<br><br>Case No.: _____ |

**COMES NOW** the plaintiff MOLLY LARKIN, who, by and through her attorneys of record, MARLER CLARK, LLP, PS and UNDERBERG & KESSLER LLP, alleges upon information and belief as follows:

## PARTIES

1.1   The plaintiff Molly Larkin is a resident of Rochester, New York. The plaintiff resides within the jurisdiction of this Court.

1.2   The defendant State Garden, Inc. ("State Garden") is a corporation organized and existing under the laws of the State of Massachusetts, with its principal place of business, on information and belief, in the State of Massachusetts. Upon information and belief, the defendant is authorized to do, and in fact does, business in the State of New York.

## JURISDICITION AND VENUE

2.1   This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1332(a) because the matter in controversy exceeds $75,000.00, exclusive of costs, it is between citizens of different states, and

1

because the defendant has certain minimum contacts with the State of New York such that maintenance of the suit in this district does not offend traditional notions of fair play and substantial justice.

2.2  Venue in the United States District Court of the Western District of New York is proper pursuant to 28 U.S.C. § 1391(a)(2) because a substantial part of the events or omissions giving rise to the plaintiff's claims and causes action occurred in this judicial district, and because the defendant was subject to personal jurisdiction in this judicial district at the time of the commencement of the action.

## GENERAL ALLEGATIONS

### Prior Outbreaks

3.1  *E. coli* O157:H7 outbreaks associated with lettuce or spinach, specifically the "pre-washed" and "ready-to-eat" varieties sold under various brand and trade names, are by no means a new phenomenon. Outlined below is a list of *E. coli* outbreaks involving contaminated lettuce or spinach:

| Date | Vehicle | Etiology | Confirmed Cases | State(s) |
|---|---|---|---|---|
| Aug. 1993 | Salad Bar | *E. coli* O157:H7 | 53 | WA |
| July 1995 | Lettuce (leafy green; red; Romaine) | *E. coli* O157:H7 | 70 | MT |
| Sept. 1995 | Lettuce (Romaine) | *E. coli* O157:H7 | 20 | ID |
| Sept. 1995 | Lettuce (Iceberg) | *E. coli* O157:H7 | 30 | ME |
| Oct. 1995 | Lettuce (Iceberg; unconfirmed) | *E. coli* O157:H7 | 11 | OH |
| May-June 1996 | Lettuce (Mesclun; red leaf) | *E. coli* O157:H7 | 61 | CT, IL, NY |
| May 1998 | Salad | *E. coli* O157:H7 | 2 | CA |
| Feb.-Mar. 1999 | Lettuce (Iceberg) | *E. coli* O157:H7 | 72 | NE |
| July-Aug. 2002 | Lettuce (Romaine) | *E. coli* O157:H7 | 29 | ID, WA |
| Oct.2003 -May 2004 | Lettuce (mixed salad) | *E. coli* O157:H7 | 57 | CA |
| April 2004 | Spinach | *E. coli* O157:H7 | 16 | CA |

2

| Sept. 2005 | Lettuce (Romaine) | *E. coli* O157:H7 | 32 | MN, OR, WI |
| Sept. 2006 | Spinach (baby) | *E. coli* O157:H7 and other serotypes | 204 | Nationwide |
| Nov./Dec. 2006 | Lettuce | *E. coli* O157:H7 | 71 | DE, NY, NJ, PA |
| Nov./Dec. 2006 | Lettuce | *E. coli* O157:H7 | 81 | IA, MN, WI |
| May 2008 | Lettuce (Romaine) | *E. coli* O157:H7 | 9 | WA |
| April 2010 | Lettuce (Romaine) | *E. coli* O145 | 33 | MI, NY, OH, PA, TN |
| March 2011 | Lettuce (Romaine) | *E. coli* O157:H7 | 55 | AR, AZ, IL, IN, KS, KY, MN, MO, NE |

3.2   In or about October 2012, in collaboration with the Food and Drug Administration, the New York State Department of Health, the New York State Department of Agriculture and Markets, and The Center for Disease Control and Prevention investigated an outbreak of sixteen (16) *E. coli* O157:H7 infections reported in New York State. As a consequence of this investigation, Wegman's, a local food retailer, recalled its brand of "Organic Spinach and Spring Mix" sold in 5 oz. and 11 oz. packages from its stores in New York, Pennsylvania, New Jersey, Virginia, Maryland and Massachusetts sold between October 14 and November 1, 2012. Upon information and belief, Wegman's recalled the product, a blend of organic spinach and spring mix, based on an association between the product and reported illnesses in New York State due to *E. coli* O157:H7 identified by New York State officials. The product is supplied to Wegman's by defendant State Garden, located in Chelsea, Massachusetts. At present, it is believed that the outbreak involves at least twenty-eight (28) victims from five (5) states, most cases in New York.

3

## Molly Larkin's Injuries

3.3 On or about the weekend of October 20, 2012, Molly Larkin, a registered nurse, purchased a plastic, clam-shell container of State Garden's spinach and spring salad mix at a Wegman's grocery store located in the Rochester, New York area. The following week on multiple occasions while at work, Ms. Larkin consumed the salad mix, which was contaminated by E. coli O157:H7 bacteria.

3.4 On or about Wednesday, October 24, 2012, Ms. Larkin experienced fatigue and nausea and the onset of gastrointestinal symptoms related her E. coli O157:H7 infection.

3.5 On or about Friday, October 26, 2012, Ms. Larkin began to suffer extremely painful, and frequent, bouts of diarrhea. Each bout of diarrhea was preceded by intense abdominal cramps, caused by the toxins released by the ingested E. coli O157:H7 bacteria which were destroying tissues in the wall of her colon. That night, these bouts of diarrhea intensified, occurring approximately every 15 minutes, and soon became bloody.

3.6 Ms. Larkin's symptoms continued unabated, and on the afternoon of Saturday, October 27, 2012, she called her doctor who instructed her to go to an urgent care clinic.

3.7 Ms. Larkin was seen at the Rochester Immediate Care clinic in Webster that evening. She was given Zofran, an anti-nausea medication, and submitted a stool sample for testing.

3.8   Ms. Larkin's symptoms persisted, causing her to continue to be unable to sleep. She remained in bed through the end of the weekend, unable to eat anything, and had great difficulty staying hydrated. The bouts of bloody diarrhea slowed some on Sunday, October 28, 2012.

3.9   Ms. Larkin stayed home from work on Monday, October 29, 2012, and continued to suffer from extreme fatigue, bloody diarrhea, abdominal cramps and an inability to eat. Ms. Larkin knew that she needed to eat something light and palatable and, not knowing that it was contaminated by E. coli O157:H7, she consumed more salad made from the same container of State Garden spinach and spring salad mix that she had purchased approximately a week earlier.

3.10   On or about Wednesday, October 31, 2012, Ms. Larkin received a call from the Rochester Immediate Care clinic that her stool sample had tested positive for E. coli O157:H7. Soon thereafter, Ms. Larkin received a call from local health department officials who inquired, among other things, whether she had eaten any of the defendant's salad products. She indicated that she had, and a health department official came to her home on Thursday, November 1, 2012, and collected the remaining salad mix for testing.

3.11   Ms. Larkin has continued to be ill with fatigue and gastrointestinal problems ever since becoming infected by E. coli O157:H7. She continues to treat her symptoms with the guidance of her primary care physician.

## CAUSES OF ACTION

### Strict Liability – Count I

4.1   At all times relevant hereto, the defendant was a manufacturer, supplier, packager, distributor and/or seller of the adulterated food product that is the subject of this action.

4.2   The adulterated food product that the defendant manufactured, supplied, packaged, distributed, and/or sold was, at the time it left the defendant's control, defective and unreasonably dangerous for its ordinary and expected use because it contained *E. coli* O157:H7, a deadly pathogen.

4.3   The adulterated food product that the defendant manufactured, supplied, packaged, distributed, and/or sold was delivered to the plaintiff without any change in its defective condition. The adulterated food product that the defendant manufactured, supplied, packaged, distributed, and/or sold was used in the manner expected and intended, and was consumed by the plaintiff.

4.4   The defendant owed a duty of care to the plaintiff to manufacture, supply, package, distribute and/or sell food that was not adulterated, that was fit for human consumption, that was reasonably safe in construction, and that was free of pathogenic bacteria or other substances injurious to human health. The defendant breached this duty.

4.5   The defendant owed a duty of care to the plaintiff to manufacture, supply, package, distribute and/or sell food that was fit for human consumption, and that was safe to the extent contemplated by a reasonable consumer. The defendant breached this duty.

4.6   Plaintiff suffered injury and damages as a direct and proximate result of the defective and unreasonably dangerous condition of the adulterated food product that the defendant manufactured, supplied, packaged, distributed and/or sold.

### Breach of Warranty – Count II

4.7   The defendant is liable to the plaintiff for breaching express and implied warranties that they made regarding the adulterated product that Ms. Larkin purchased.  These express and implied warranties included the implied warranties of merchantability and/or fitness for a particular use.  Specifically, the defendant expressly warranted, through its sale of food to the public and by the statements and conduct of its employees and agents, that the food it prepared and sold was fit for human consumption and not otherwise adulterated or injurious to health.

4.8   The *E. coli*-contaminated food that the defendant sold to retailers, which in turn was sold to plaintiff, would not pass without exception in the trade and was therefore in breach of the implied warranty of merchantability.

4.9   The *E. coli*-contaminated food sold to plaintiff was not fit for the uses and purposed intended, *i.e.*, human consumption, and that this product was therefore in breach of the implied warranty of fitness for its intended use.

4.10   As a direct and proximate cause of the defendant's breach of warranties, as set forth above, the plaintiff sustained injuries and damages in an amount to be determined at trial.

## Negligence – Count III

4.11   The defendant owed to the plaintiff a duty to use reasonable care in the manufacture, supply, packaging, distribution and sale of its food product, which duty would have prevented or eliminated the risk that the defendant's food products would become contaminated with *E. coli* O157:H7 or any other dangerous pathogen. The defendant breached this duty.

4.12   The defendant had a duty to comply with all statutes, laws, regulations, or safety codes pertaining to the manufacture, distribution, storage, and sale of its food product, but failed to do so, and was therefore negligent. The plaintiff is among the class of persons designed to be protected by these statutes, laws, regulations, safety codes or provision pertaining to the manufacture, distribution, storage, and sale of similar food products.

4.13   The defendant had a duty to properly supervise, train and monitor its respective employees, and to ensure its respective employees' compliance with all applicable statutes, laws, regulations, or safety codes pertaining to the manufacture, distribution, storage, and sale of similar food products, but the defendant failed to do so and was therefore negligent.

4.14   The defendant had a duty to use ingredients, supplies, and other constituent materials that were reasonably safe, wholesome, free of defects, and that otherwise complied with applicable federal, state, and local laws, ordinances, and regulations, and that were clean, free from adulteration, and safe for human consumption, but the defendant failed to do so and was therefore negligent.

4.15   As a direct and proximate result of the defendant's acts and

omissions of negligence, the plaintiff sustained injuries and damages in an amount to be determined at trial.

### Negligence *Per Se* – Count IV

4.16   The defendant had a duty to comply with all applicable state and federal regulations intended to ensure the purity and safety of its food product, including the requirements of the Federal Food, Drug and Cosmetics Act (21 U.S.C. § 301, *et seq.*).

4.17   The defendant failed to comply with the provisions of the health and safety acts identified above, and, as a result, was negligent *per se* in its manufacture, distribution, and sale of food adulterated with *E. coli* O157:H7, a deadly pathogen.

4.18   As a direct and proximate result of conduct by the defendant that was negligent *per se*, the plaintiff sustained injury and damages in an amount to be determined at trial.

### DAMAGES

5.1   The plaintiff has suffered general, special, incidental, and consequential damages as the direct and proximate result of the acts and omissions of the defendant, in an amount that shall be fully proven at the time of trial. These damages include, but are not limited to: damages for general pain and suffering; damages for loss of enjoyment of life, both past and future; medical and related expenses, both past and future; travel and travel-related expenses, past and future; emotional distress, past and future; pharmaceutical expenses, past and future; lost wages; and all other ordinary, incidental, or

consequential damages that would or could be reasonably anticipated to arise under the circumstances.

## JURY DEMAND

6.1    The plaintiff hereby demands a jury trial.

## PRAYER FOR RELIEF

**WHEREFORE,** the plaintiff prays for judgment against the defendant as follows:

A.    Ordering compensation for all general, special, incidental, and consequential damages suffered by the plaintiff as a result of the defendant's conduct;

B.    Awarding plaintiff her reasonable attorneys' fees and costs, to the fullest extent allowed by law; and

C.    Granting all such additional and/or further relief as this Court deems just and equitable.

DATED:   November 26, 2012
         Rochester, New York            **MARLER CLARK, LLP, PS**

                                        By:   /s/ William D. Marler
                                              William D. Marler, Esq., WSBA #17233
                                              *Attorneys for Plaintiff*
                                              1301 Second Avenue, Suite #2800
                                              Seattle, Washington 98101
                                              Telephone: 1-(866) 770-2032
                                              bmarler@marlerclark.com

**UNDERBERG & KESSLER LLP**

By: /s/ Paul V. Nunes
Paul V. Nunes, Esq., NYSBA #1046135
*Attorneys for Plaintiff*
300 Bausch & Lomb Place
Rochester, New York 14604
Telephone: (585) 258-2800
pnunes@underbergkessler.com